**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **SHAMROCK TIRE & AUTO SERVICE, INC., d/b/a/ Tire Dealers Warehouse,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HESSELBEIN TIRE CO., INC. d/b/a Hesselbein Tire of Oklahoma, JACOB REID, JASON BURHENN, and JK BURHENN VENTURES LLC,**<br><br>**Defendants.** | ) | **Case No. 26-CV-0390-CVE-MTS** |

**OPINION AND ORDER**

Now before the Court are defendants' motions to dismiss (Dkt. ## 23, 25) and plaintiff's amended motion for temporary restraining order and preliminary injunction (Dkt. # 9). Plaintiff Shamrock Tire & Auto Service, Inc. (Shamrock) filed this case alleging that Hesselbein Tire Co., Inc. (Hesselbein) conspired with the general manager of its Shamrock's Wichita, Kansas operations, Jason Burhenn, to secretly open a competing wholesale tire business using proprietary and confidential business information stolen from Shamrock. In particular, Shamrock focuses on Hesselbein's interference with the wholesale tire market in Wichita and Shamrock's operations in the state of Kansas, and Shamrock alleges that Hesselbein operates a competing tire warehouse in Wichita at which Burhenn is employed. Dkt. # 9, at 22-23. Shamrock asks the Court to enter a preliminary injunction directing Hesselbein to refrain from using information gathered from Burhenn in his capacity as Shamrock's general manager of Wichita operations and to prohibit Hesselbein and Burhenn from soliciting customers of Shamrock's Wichita wholesale operation. Burhenn and JK Burhenn Ventures, LLC (JKBV) argue that they are residents of Kansas and are not subject to

personal jurisdiction in Oklahoma. Dkt. # 23. Hesselbein and Jacob Reid contend that plaintiff's complaint fails to state a claim upon which relief can be granted against them. Dkt. # 25.

**I.**

Shamrock operates a wholesale and retail tire business and it distributes tires obtained from Hesselbein out of its Wichita branch. Dkt. # 2, at 4. Burhenn worked for Shamrock as the general manager of its Wichita operations and he had substantial responsibility over all of Shamrock's Kansas operations. Id. Burhenn had access to confidential business information such as customer identification, pricing, inventory, and operational practices. Id. Shamrock alleges that it restricted access to this information to limited personnel, and this information had independent economic value by virtue of not being known or accessible to Shamrock's competitors. Id. Burhenn allegedly created a competing entity known as JKBV which also distributed and sold tires and related products. Id. at 5. Shamrock claims that Burhenn used Shamrock's Wichita warehouse to store and ship orders for his private business, and Burhenn was simultaneously developing a business relationship with Hesselbein. Id. at 5-6. Burhenn purchased a large quantity of tires from Hesselbein and used Shamrock's Wichita warehouse to store, handle, and sell the tires he purchased from Hesselbein. Id. at 6.

Jacob Reid, a general manager of Hesselbein in Oklahoma, contacted Shamrock and expressed an interest in acquiring Shamrock's Wichita operations on behalf of Hesselbein. Id. at 7. Hesselbein and Shamrock entered a confidentiality agreement under which Shamrock provided confidential business information to Hesselbein for the purpose of evaluating a potential acquisition of Shamrock's Wichita operations. Id. The confidentiality agreement prohibited Hesselbein from soliciting Shamrock's employees for a period of 18 months, and the parties agreed that the

confidentiality agreement would be governed by Kansas law "without giving effect to applicable principles of conflicts of law to the extent that the application of the laws of another jurisdiction would be required thereby." Dkt. # 9, at 30. Pursuant to the confidentiality agreement, Shamrock provided Hesselbein "detailed financial and operational information . . ., including multi-year financial statements and updated financial reporting." Id. at 8. Hesselbein claimed it was reviewing the documents provided by Shamrock at the "home office" level and assured Shamrock that it would be taking steps to move forward with the acquisition. Id. Shamrock relied on these representations and provided Hesselbein with additional "confidential information." Id. Hesselbein continued to request additional information from Shamrock throughout 2025, and Shamrock continued to provide the information based on its belief that the acquisition was proceeding. Id.

Shamrock alleges that Hesselbein was actually using the confidential business information it provided to develop a competing business, and Burhenn was also working with Hesselbein to provide it information about Shamrock's customers, margins, and logistics. Id. at 9. Burhenn and Hesselbein continued to work together into 2026, and Burhenn and Reid began planning to recruit Shamrock employees to the competing entity. Id. They particularly targeted Shamrock employees with knowledge of Shamrock's customer relations, pricing, and other confidential information that could be used to attract Shamrock's customers to do business with the competing entity. Id. at 10. In June 2026, Burhenn left his employment with Shamrock and began working for Hesselbein at its Wichita warehouse, and Shamrock claims that Burhenn is actively soliciting Shamrock's customers on behalf of Hesselbein. Hesselbein has made no offer to acquire Shamrock's Wichita operations, and Shamrock claims that Hesselbein never had any genuine intention to make the acquisition.

On June 26, 2026, Shamrock filed this case seeking monetary damages, punitive damages, and injunctive relief. Shamrock has filed a motion for temporary restraining order and preliminary injunction that:

> (1) preserves evidence, including Burhenn's personal devices and accounts; (2) bars Defendants from using or disclosing Shamrock's trade secrets and confidential information, including evaluation material furnished under the Confidentiality Agreement; (3) enjoins Defendants from soliciting, servicing, supplying, or selling to the Wichita wholesale customers with which Burhenn was involved during his employment; (4) to the extent he is employed by Hesselbein, enjoins Hesselbein from providing Burhenn access to the accounts and from Shamrock's confidential information; (5) enjoin Hesselbein from directly or indirectly soliciting Shamrock employees or former employees; and (6) requires return of Shamrock's materials, including any materials Burhenn retained after his employment ended.

Dkt. # 9, at 7. Plaintiff has alleged claims of breach of fiduciary duty against Burhenn, aiding and abetting breach of fiduciary duty, and fraudulent inducement claims against Hesselbein and Reid, a breach of confidentiality agreement claim against Hesselbein, an unjust enrichment claim against Burhenn and JKBV, as well as claims of tortious interference with business relations, civil conspiracy, violations of state and federal trade secrets laws, and racketeering against all defendants.

**II.**

Defendants Hesselbein and Reid ask the Court to dismiss the claims against them under Fed. R. Civ. P. 12(b)(6), and Burhenn and JKBV argue that they are not subject to personal jurisdiction in Oklahoma. Dkt. ## 23. 25. Plaintiff responds that it has adequately alleged each of its claims against Hesselbein and Reid, and Burhenn and JKBV have sufficient minimum contacts with Oklahoma for this Court to exercise personal jurisdiction over them. Dkt. ## 30, 31.

**A.**

Burhenn and JKBV argue that the Court cannot exercise personal jurisdiction over them, because they are residents of Kansas who do not have sufficient minimum contacts with Oklahoma to establish personal jurisdiction. Dkt. # 23. Plaintiff responds that Burhenn, on behalf of JKBV, conspired with Reid to establishing a competing business, and Burhenn traveled to Oklahoma to meet with Reid and regularly communicated with Reid in Oklahoma to conduct business. Dkt. # 30, at 6-9.

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of establishing that the Court has personal jurisdiction over the defendant. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." Id. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." Id. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985)). The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor. Id.

For a court to exercise personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. See OKLA. STAT. tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1416 (10th Cir. 1988)); see also Hough v. Leonard, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." Conoco, Inc. v. Agrico Chem. Co., 115 P.3d 829, 835 (Okla. 2004) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" Intercon, 205 F.3d at 1247 (quoting World-Wide Volkswagen, 444 U.S. at 291). The existence of such minimum contacts must be shown to support the exercise of either general jurisdiction or specific jurisdiction. Id. "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." Id. (citing Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 & n.9 (1984)). Alternately, a court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his

activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" Id. (quoting Burger King Corp., 471 U.S. at 472).

Plaintiff does not contend that Burhenn or JKBV are subject to general personal jurisdiction in Oklahoma and, in such cases, the personal jurisdiction analysis as to specific personal jurisdiction requires the district court to consider three factors: "(1) whether the defendant purposefully directed its activities at residents in the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." Newsome v. Gallacher, 722 F.3d 1257, 1264 (10th Cir. 2013). Burhenn contends that he is the co-owner of JKBV, and he states that he is a resident of Kansas and JKBV is organized under the laws of Kansas. Dkt. # 23, at 3. He states that JKBV is not registered to conduct business in Oklahoma and he has never solicited business in Oklahoma. Id. at 3-4. Plaintiff has provided evidence that JKBV began buying tires from Hesselbein Tire of Oklahoma from September 2024 to at least November 2025. Dkt. # 9, at 46-48. Shamrock found emails between Reid and Burhenn in which Burhenn and Reid discussed forming an entity in Wichita that would directly compete with Shamrock, and the evidence provided by Shamrock shows that the emails were sent between January 2025 and April 2026. Id. at 55-59. Burhenn came to Tulsa to meet with Reid to "hash out" the details of the competing entity, which included operational concerns, employee pay, and taxes. Id. at 57-58. In January 2025, Burhenn sent a manila folder to Tulsa with one of Reid's drivers, and Burhenn and Reid discussed how to manage Burhenn's transition to Hesselbein. Id. at 55-56.

Plaintiff has produced evidence showing that Burhenn, acting on behalf of JKBV, purposefully and regularly directed his actions toward Oklahoma and these actions directly gave rise

to plaintiff's claims. Reid and Burhenn regularly communicated about forming an entity that would compete with Shamrock, and Burhenn traveled to Tulsa on at least one occasion to meet with Reid. Burhenn and JKBV purchased tires from Hesselbein in Oklahoma for over a year in furtherance of their plan. Burhenn and JKBV may not otherwise conduct business in Oklahoma, but these contacts are sufficient to show that they purposefully directed their actions toward Oklahoma. These activities also caused an injury to plaintiff, as these actions constituted a substantial step in the formation of a competing entity that Burhenn and JKBV allegedly created to undermine plaintiff's role in the Wichita wholesale tire market. Kansas undoubtedly has a stronger connection to plaintiff's claims and the key parties, but plaintiff has shown that Burhenn and JKBV purposefully directed their activities to an Oklahoma resident and plaintiff's injury arose, in part, from Burhenn's and JKBV's contacts with Oklahoma.

Plaintiff must also show that it would not offend traditional notions of fair play and substantial justice for this Court to exercise jurisdiction over Burhenn and JKBV. The Tenth Circuit has provided district courts five factors to consider in determining whether exercise of personal jurisdiction would offend the traditional notions of fair play and substantial justice. The first factor is the burden on defendant of litigating in plaintiffs' chosen forum. OMI Holdings, 149 F.3d at 1095. The Tenth Circuit has said that "[t]his factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." Id. at 1096 (citing World-Wide Volkswagen, 442 U.S. at 292). The second factor analyzes Oklahoma's interest in resolving the parties' dispute. OMI Holdings, 149 F.3d at 1095. Oklahoma "generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 474 (quoting McGee v. Int'l Life

Ins. Co., 355 U.S. 220, 223 (1957)). The third factor examines "the plaintiff's interest in receiving convenient and effective relief" in the forum state. OMI Holdings, 149 F.3d at 1095. "This factor may weigh heavily in cases where a [p]laintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit." Id. at 1097 (citing P. Atl. Trading Co. v. M/V Main Express, 758 F.2d 1325, 1331 (9th Cir. 1985)). The fourth factor concerns "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," which the Tenth Circuit has stated is the examination of "whether the forum state is the most efficient place to litigate the dispute." Id. "Key to the inquiry are the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." Benton v. Cameco Corp., 375 F.3d 1070, 1079 (10th Cir. 2004) (quoting OMI Holdings, 149 F.3d at 1097). The fifth and final factor examines "the interests of the several states, in addition to the forum state, in advancing fundamental substantive social policies." OMI Holdings, 149 F.3d at 1097.

The Court has reviewed the relevant factors and finds that plaintiff has not made a strong showing that the Court should exercise personal jurisdiction over defendants. The first factor (burden on defendants) somewhat weighs against the exercise of personal jurisdiction, as Burhenn and JKBV are residents of Kansas and there is some burden on them to litigate outside of their home state. Plaintiff argues that Oklahoma has a strong interest in providing a forum for adjudicating claims concerning a scheme committed by an Oklahoma resident, and the second factor (forum state's interest in dispute) weighs strongly in favor of personal jurisdiction. The Court disagrees and finds that Oklahoma has relatively little interest in providing a forum for a case brought by Kansas

plaintiffs for an alleged scheme taking place primarily in Kansas. This case has not been brought by an Oklahoma resident, there is an open question as to whether Oklahoma or Kansas law applies, and plaintiff has not shown that Oklahoma has a significant interest in the parties' dispute. Dental Dynamic, LLC v. Jolly Dental Group, LLC, 946 F.3d 1223, 1232 (10th Cir. 2020) (Oklahoma has a strong interest in providing a forum for its residents to litigate but this interest is weakened when another state's law may apply to the dispute). The third factor (plaintiff's interest in effective relief) also weighs against plaintiff, as it would not be burdensome for plaintiff to litigate this case in Kansas, and it may actually be more burdensome for all parties except for Reid to litigate this case in Oklahoma. The Court also notes that it cannot enforce an injunction outside of the Northern District of Oklahoma, and plaintiff will receive more convenient and effective relief in another forum. The fourth factor (interests of interstate judicial system) weighs against allowing plaintiff to litigate against Burhenn and JKBV in Oklahoma, as this factor primarily concerns the location of witnesses and evidence, choice of law, and avoidance of piecemeal litigation. The most important witnesses and evidence are located in Kansas, plaintiff's claims may be governed by Kansas law, and plaintiff has not shown that Oklahoma is the most efficient forum to litigate its claims. Finally, there are no significant social policies at issue in this case, and the fifth factor does not weigh for or against the exercise of personal jurisdiction over Burhenn and JKBV.

The Court must balance the strength of defendants' minimum contacts with the due process factors on a sliding scale, and the "weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction." TH Agriculture & Nutrition, LLC v. Ace European Group Ltd., 488 F.3d 1282, 1292 (10th Cir. 2007). Plaintiff has shown that defendants Burhenn and JKBV have sufficient minimum contacts with Oklahoma to

support the exercise of specific personal jurisdiction, but these contacts cannot be described as particularly strong or substantial. Burhenn and JKBV reside in Kansas and primarily conduct business in Kansas, but they did purchase tires from Hesselbein's Tulsa warehouse. Plaintiff has shown that Burhenn and Reid engaged in interstate communications concerning the formation of an entity that would compete with Shamrock, and Burhenn made at least one trip to Tulsa in furtherance of the scheme. However, these contacts were with another defendant and not with plaintiff, and the primary actions giving rise to plaintiff's claims occurred in Kansas. The Court finds that Burhenn's and JKBV's minimum contacts with Oklahoma are relatively modest considering the nature of plaintiff's claims, and the due process factors weigh strongly in favor of a finding that the Court should refrain from exercising personal jurisdiction over them.

Plaintiff asks the Court to exercise its discretion to transfer this case to the District of Kansas, rather than dismiss Burhenn and JKBV and require piecemeal litigation in multiple forums to fully resolve plaintiff's claims. Dkt. # 30, at 22-23. Under § 1404(a), a district court may transfer a civil case to any judicial district in which it could originally have been filed "[f]or the convenience of parties and witnesses." However, § 1404 applies only when the case has been filed in a proper venue, and a court may not transfer a case under § 1404 if it lacks personal jurisdiction over a defendant or venue is improper. See Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 n.3 (10th Cir. 1991). In cases when a court has found that it lacks personal jurisdiction over the defendant or that venue is improper, the court has the discretion to transfer a case to an

appropriate forum under 28 U.S.C. §§ 1406 and 1631.[1] When deciding whether to dismiss or transfer a case, a district court should consider whether the case would be time-barred if re-filed, if the plaintiff's claims are likely to have merit, and if the plaintiff acted in good faith by filing in the selected forum. Trujillo v. Williams, 465 F.3d 1210, 1223 n.16 (10th Cir. 2006). The court must also make a finding that the transferee court is one in which the case could have been filed. Viernow v. Euripides Development Corp., 157 F.3d 785, 793 n.16 (10th Cir. 1998). Even if the defendant consents to a transfer to a forum, the Court cannot transfer a case to another court under § 1404 or § 1406 without determining whether the case "could have been brought" in the transferee court. See Chrysler Credit, 928 F.2d at 1515-16.

The Court finds that this it would be in the interests of justice to transfer this case to the District of Kansas in light of the Burhenn's and JKBV's agreement that Kansas is an appropriate forum for plaintiff's claims and the application of the Trujillo factors. The parties do not dispute that Kansas would have personal jurisdiction over all of the named defendants and it would be a proper venue for plaintiff's claims. Dkt. # 30, at 23; Dkt. # 36, at 3. Defendant Hesselbein and Reid have filed a motion to dismiss asserting that plaintiff's have failed to state against them, but the Court has not ruled on that motion and there is nothing about the briefing on the motion to dismiss suggesting that plaintiff's claims are wholly lacking in merit. The Court does not find that plaintiff acted in bad faith by filing the case in the Northern District of Oklahoma, even if the District of Kansas has a more substantial connection to plaintiff's claims. The Court finds that plaintiff could litigate its

---

[1] Although § 1406 mentions only transfer for improper venue, the Tenth Circuit has held that a district court lacking personal jurisdiction has the authority to transfer a case to a "court in which the action . . . could have been brought at the time it was filed . . . ." Ross v. Colorado Outward Bound School, Inc., 822 F.2d 1524, 1527 (10th Cir. 1987).

claims against all defendants in Kansas, that court would have the authority to grant all of the relief sought by plaintiff, and it is in the interests of justice to transfer this case to the District of Kansas.

**IT IS THEREFORE ORDERED** that defendants Burhenn and JKBV's motion to dismiss (Dkt. # 23) is **granted in part** and **denied in part**; the motion is granted as to defendants' assertion that the Court lacks personal jurisdiction over them, but their request for dismissal of the claims against them for lack of personal jurisdiction is denied.

**IT IS FURTHER ORDERED** that this case is transferred to the United States District Court for the District of Kansas.

**IT IS FURTHER ORDERED** that defendants Hesselbein's and Reid's motion to dismiss (Dkt. # 25) and plaintiff's amended motion for temporary restraining order and preliminary injunction (Dkt. # 9) remain pending.

**DATED** this 30th day of September, 2026.

Claire V. Eagan
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE